IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STUART ANGLIN,                      )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   C.A. No. 20-276 (MN)
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Defendant.              )

## MEMORANDUM OPINION

Charles J. Brown, III, GELLERT SCALI BUSENKELL & BROWN, LLC, Wilmington, DE; Michael Lynn Gabriel, THE LAW OFFICE OF MICHAEL LYNN GABRIEL, East Palo Alto, CA – Attorneys for Plaintiff

David C. Weiss, UNITED STATES ATTORNEY, Wilmington, DE; Shamoor Anis, ASSISTANT UNITED STATES ATTORNEY, Wilmington, DE – Attorneys for Defendant.

March 18, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendant the United States of America's ("Defendant" or "the United States") motion to dismiss (D.I. 14) Plaintiff Stuart Anglin's ("Plaintiff") First Amended Complaint (D.I. 12). The motion is filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that: (1) Plaintiff has failed to establish Article III standing; (2) this Court lacks jurisdiction over the subject matter; and (3) Plaintiff's claims are barred by sovereign immunity and well as pursuant to Rule 12(b)(6) for failure to state a claim because Plaintiff's claims are time-barred. For the reasons set forth below, this Court GRANTS Defendant's motion for lack of subject matter jurisdiction.[1]

I.  **BACKGROUND**

Prior to the colonization of the now-United States by mainly-European settlers, the land was populated by an array of indigenous peoples and cultures. As the fledgling United States expanded westward throughout the eighteenth and nineteen centuries, the young nation encountered these peoples, many of whom belonged to cultures for whom the European system of private land ownership was foreign. Eventually, the United States, by way of a series of treaties culminating in the 1835 Treaty of New Echota, acquired enormous tracts of land from a people known in today's parlance as the Cherokee. (*See generally* D.I. 12). Plaintiff, who claims descendance from Cherokee Chief Crane Eater, brought this action alleging that the United States severely undervalued the land acquired in the Treaty of New Echota and seeking to recover damages on behalf of all Cherokee.

Plaintiff filed the present action by way of class action Complaint on February 25, 2020. (D.I. 1). Therein he alleged that the United States' acquisition of the land in question was, in fact,

---

[1] The Court notes without deciding that it appears that Plaintiff's claims are also time-barred.

an unconstitutional taking; Plaintiff sought return of the land, fair compensation for the land taken, and declaratory relief declaring the Treaty of New Echota invalid. (*See* D.I. 1 at 17-20).

On June 25, 2020, Defendant filed a motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. (*See* D.I. 5; D.I. 6). The motion was fully briefed by both parties. (*See* D.I. 6; D.I. 8; D.I. 10). With Defendant's June 25, 2020 motion still pending, this Court dismissed Plaintiff's Complaint *sua sponte* after finding that Plaintiff failed to allege therein that he was a member of the Cherokee or was of Cherokee descent and therefore lacked standing to bring the present action. (*See* D.I. 11).

On October 27, 2020, Plaintiff filed the now-operative First Amended Complaint, alleging that he is a direct descendant of Cherokee Chief Crane Eater. (D.I. 12 ¶ 5). Plaintiff alleged the same three counts. (*See id.* at 19-22). On December 7, 2020, Defendant filed the instant motion to dismiss Plaintiff's First Amended Complaint. (D.I. 14).

## II.  LEGAL STANDARD

### A.  Subject Matter Jurisdiction

Federal district courts, like this one, are courts of limited jurisdiction. Article III of the United States Constitution "extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies;'" namely, those cases and controversies of the sort amenable to resolution by judicial process. *Steel Co.*, 549 U.S. at 102 (quoting *Muskrat v. United States*, 219 U.S. 346, 356-57 (1911)). "Without jurisdiction the [C]ourt cannot proceed at all in any cause . . . [and] it may not assume jurisdiction for the purpose of deciding the merits of the case." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93-102 (1998)) (internal quotation omitted).

"A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack is an argument that considers a claim on its face and asserts that the claims are "insufficient to invoke the subject matter of the court" for various reasons, including because the claims do not present a question of federal law, or because there exists some other jurisdictional defect. *Id.* at 358. A factual attack is an argument that the facts of the case do not support the grounds for jurisdiction set forth in the complaint. *Id.*

In reviewing a facial attack, a court applies the same standard of review used in evaluating a motion to dismiss under Rule 12(b)(6): all facts alleged in the complaint are to be construed in favor of the nonmoving party. *Id.* When considering a factual attack, however, a court may consider evidence outside the pleadings. *Id.*

1. Standing

Of the various justiciability doctrines, "perhaps the most important" inquiry before a district court is whether a plaintiff has "'standing' to invoke the power of a federal court." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co.*, 549 U.S. at 102.

> The "irreducible constitutional minimum of standing" contains three requirements. *Lujan v. Defenders of Wildlife*, *supra*, at 560, 112 S.Ct., at 2136. First and foremost, there must be alleged (and ultimately proved) an "injury in fact" – a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, *supra*, at 149, 155, 110 S.Ct., at 1723 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101-102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v.*

3

>   *Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1925-1926, 48 L.Ed.2d 450 (1976).  And third, there must be redressability – a likelihood that the requested relief will redress the alleged injury. *Id.*, at 45-46, 96 S.Ct., at 1927-1928; *see also Warth v. Seldin*, 422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975).  This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

*Id.* at 102-104 (footnote omitted).

The Third Circuit has recognized that of the three required elements of standing, "injury-in-fact . . . is often determinative."  *In re Schering Plough Corp.*, 678 F.3d at 245 (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009)).  To satisfy this requirement, a plaintiff's alleged injury must be "particularized;" put differently, the injury must "affect the plaintiff in a personal and individual way."  *In re Schering Plough Corp.*, 678 F.3d at 245 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).  Requiring more than just injury to a cognizable interest, the injury-in-fact test requires that the party seeking review be himself among the injured.  *Lujan*, 504 U.S. at 563.

### 2. Sovereign Immunity

Neither the United States nor the agencies thereof may be sued unless Congress expressly waives sovereign immunity.  *Nederland Shipping Corp. v. United* States, 456 F. Supp. 3d 584, 590 (D. Del. 2020).  Absent such a waiver, sovereign immunity "not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States."  *Id.* (quoting *Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999)).

### 3. Federal Claims Court

In addition to the "cases and controversies" requirement, the Constitution gives Congress "nearly 'plenary' power to shape" the scope of federal court jurisdiction by statute.  *Guerra v.*

*Consolid. Rail Corp.*, 936 F.3d 124, 131 (3d Cir. 2019) (citation omitted). Indeed, Congress has the power to limit the jurisdiction of federal district courts, including by passing laws which strip jurisdiction over certain claims from the district courts. *See Patchak v. Zinke*, 138 S.Ct. 897, 906-08 (2018).

### III. DISCUSSION

#### A. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims

##### 1. Plaintiff Lacks Standing

Defendant's challenge to Plaintiff's standing is a facial challenge – Defendant contends that even if the factual allegations in Plaintiff's First Amended Complaint are true, Plaintiff lacks standing to bring these claims. (*See* D.I. 15 at 3-6). This Court agrees with Defendant and will dismiss the present action because Plaintiff lacks standing.

To have standing, Plaintiff must show three elements: (1) injury-in-fact; (2) causation; and (3) redressability. Even assuming, *arguendo*, that Plaintiff is able to satisfy the causation and redressability elements of standing, Plaintiff is unable to demonstrate the requisite injury-in-fact necessary to have standing to sue.

An injury-in-fact, with regard to standing, must be "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Steel Co.*, 549 U.S. at 102. Plaintiff faces a high hurdle, as the events leading to Plaintiff's alleged injury occurred nearly two hundred years ago – doubtless, several scores at minimum before Plaintiff was born.

Plaintiff's theory that he has suffered an injury-in-fact is based upon Plaintiff's assertion that Plaintiff is a direct descendent of Cherokee Chief Crane Eater. (D.I. 12 ¶ 5). Plaintiff does not claim that land or property he personally, legally possessed was wrongfully taken from him by

the United States during his lifetime.[2]  Plaintiff instead alleges[3] that his injury occurred December 29, 1835, when the Treaty of New Echota was signed and the United States purchased the land in question from the Cherokee.  (D.I. 12 ¶ 25).

Plaintiff argues that because of his Cherokee ancestry, he was harmed when the treaty was signed.  (*See* D.I. 18 at 3-6).  Although the Third Circuit has not definitively ruled on the issue, courts in other Circuits have rejected the notion that "a plaintiff can suffer an injury for purposes of constitutional standing simply by virtue of an [alleged] injury suffered by her ancestors." *Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 110 (D.D.C. 2016).  Perhaps most notable is the Seventh Circuit Court of Appeals' decision in *In re African-American Slave Descendants Litig.*, 471 F.3d 754 (7th Cir. 2006).  In examining whether plaintiffs suing in their capacity as descendants of former slaves suffered injury-in-fact as a result of the wrongs done to their ancestors, Judge Posner found a "fatal disconnect between the victims and the plaintiffs." *Id.* at 759.  "It would be impossible," the court continued, "by the methods of litigation to connect the defendants' alleged misconduct with the financial and emotional harm that the plaintiffs claim to have suffered as a result of that conduct." *Id.*  Such a causal chain is "too long and has too many weak links for a court to be able to find that the defendants' conduct harmed the plaintiffs at all, let alone in an amount that could be estimated without the wildest speculation." *Id.*

---

[2]   Indeed, Plaintiff does not identify a single parcel of land possessed by a single individual on any single date – even before the United States purchased the land in question.

[3]   This Court, of course, recognizes that the Treaty of New Echota exists and was signed and that the incidents known as the "Trail of Tears" did indeed occur.  The use of the words "allegation/allege/allegedly" herein are not meant to cast doubt on the recounting or impact of historical events, but instead are meant to identify a particular proposition as having been put forth in Plaintiff's First Amended Complaint.

Alternatively, absent support in the law,[4] Plaintiff would have this Court rely upon Cherokee religion and the Cherokee Constitution of 1827 to support the idea that the conveyance of land to Defendant was improper and to create a nebulous potentially-once-existing property right in the land belonging to Plaintiff. (*See* D.I. 18 at 3-6). Plaintiff claims that in Cherokee culture, he, like all Cherokee descendants, would have possessed an ownership right akin to a life estate in the land in question were it still in the possession of the Cherokee. (*See id.*).[5] Cherokee law and religion, however, are not what govern this Court. This Court is governed by – and applies the law of – the United States, its Constitution, and its laws. Under these governing laws, Plaintiff's injury-in-fact is neither concrete nor imminent, and is instead conjectural at best.

For the reasons above, this Court agrees with the Seventh Circuit that "[w]hen a person is wronged he can seek redress, and . . . his descendants may benefit, but the wrong to the ancestor is not a [legal] wrong to the descendants." *In re African-American Slave Descendants Litig.*, 471 F.3d at 759. It is clear from the face of the First Amended Complaint, as the injury alleged occurred almost two hundred years ago, Plaintiff himself has not demonstrated the he, himself, has suffered a concrete injury. As Plaintiff has not alleged a legally-valid injury-in-fact, Plaintiff lacks standing, and Plaintiff's First Amended Complaint will be dismissed.

2. Plaintiff's Claims Are Barred by Sovereign Immunity

Even if, *arguendo*, the Plaintiff had constitutional standing to bring the case at bar, Defendant is immune from suit based on sovereign immunity. The United States may not be sued

---

[4] Plaintiff's Answering Brief cites no law in support of his argument for finding injury-in-fact. (*See* D.I. 18 ¶¶ 12-23).

[5] Plaintiff's theory also potentially runs aground on rarefied shores. Any life estate on the land specifically for Plaintiff, if created prior to 1835, would almost certainly have been invalid when created under the then-prevalent common-law rule against perpetuities.

7

absent an explicit waiver of its sovereign immunity. *See Nederland Shipping Corp.*, 456 F. Supp. 3d at 590. Plaintiff's First Amended Complaint, however, fails to identify any law, act, provision, or decision explicitly waiving Defendant's sovereign immunity in this case.[6] (*See generally* D.I. 12).

Instead, in his Answering Brief, Plaintiff sets forth several cases which Plaintiff claims support the notion that "sovereign immunity . . . could not be asserted to bar the U.S. Government [sic] from being sued and held liable for its constitutional violations." (D.I. 18 ¶ 31, 32-47). First, Plaintiff's argument relies heavily on *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). *McGirt*, however, does not involve sovereign immunity. Indeed, the United States is not a party to that action. *See id.* Second, Plaintiff asserts that *United States v. Lee*, 106 U.S. 196 (1882) stands for the proposition that sovereign immunity does not apply in cases where an unconstitutional taking is alleged. (*See* D.I. 18 ¶ 38). Plaintiff's reliance on *Lee* for this proposition is misplaced at best. Like *McGirt*, the United States was not a party to *Lee*. *See Lee*, 106 U.S. at 107 ("[t]he United States was not a party to the suit below."). In fact, in *Lee*, the United States "expressly declined to submit itself as a defendant to the jurisdiction of the court." *Id.* Finally, Plaintiff cites *Trump v. Hawaii*, 138, S.Ct. 2392 (2018). That case relates to the scope of presidential power under the Immigration and Nationality Act, is not about sovereign immunity, and has no application to Plaintiff's claims.

Plaintiff's First Amended Complaint and Answering Brief fail to identify any explicit waiver of – or any other reason to disregard – Defendant's sovereign immunity. Sovereign

---

[6] In fact, Plaintiff's First Amended Complaint does not contain any among the words "immunity," "waive," or "waiver." (*See generally* D.I. 12).

immunity prohibits this Court from exercising jurisdiction over the subject matter. Accordingly, this Court will dismiss this action.

        3.      <u>The Tucker Act Bars District Court Jurisdiction over Plaintiff's Claims</u>

As discussed *supra*, Congress has the power to limit the jurisdiction of federal district courts. *See Patchak*, 138 S.Ct. at 906-08. Congress' passage of the Tucker Act, 28 U.S.C. § 1491, is one such limit on the jurisdiction of the federal district courts. The Tucker Act reserves to the United States Court of Federal Claims jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." § 1491(a)(1). Plaintiff asserts (either in the alternative or coincidentally, Plaintiff's Answering Brief is unclear) that the claims in the First Amended Complaint are constitutional (*see* D.I. 18 at 8-12) or contractual in nature (*see id.* ¶ 70). As such, the Tucker Act reserves jurisdiction to hear Plaintiff's claims to the Court of Federal Claims. *See generally* § 1491.

Plaintiff's argument that the Court of Federal Claims lacks jurisdiction over the non-monetary claims brought in the First Amended Complaint is directly opposed to the law of the Federal Circuit. (*See* D.I. 18 at 16-17). In fact, "the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction." *Nat'l Air Traffic Controllers Ass'n v. U.S.*, 160 F.3d 714, 716 (Fed. Cir. 1998). Thus, Plaintiff's contention that the Court of Federal Claims could not decide Plaintiff's entire action is without merit.

Congress clearly intended to (and did) reserve jurisdiction over claims like these to the specialized Court of Federal Claims. As such, this Court lacks subject matter jurisdiction over Plaintiff's claims and his First Amended Complaint will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 14) is GRANTED. An appropriate order will follow.